CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
March 08, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **TELLY SAVALAS BRISTOL,** | ) |
| Plaintiff, | ) Case No. 7:22CV00603 |
| v. | ) **OPINION AND ORDER** |
| **DAVID ANDERSON, ET AL.,** | ) JUDGE JAMES P. JONES |
| Defendants. | ) |

*Telly Savalas Bristol, Pro Se Plaintiff;* D. Patricia Wallace, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION, *Richmond, Virginia, for Defendants.*

The plaintiff, Telly Savalas Bristol, an unrepresented Virginia inmate, filed this action under 42 U.S.C. § 1983, alleging that the defendants failed to provide him with adequate mental health care in violation of his rights under the First, Eighth, and Fourteenth Amendments to the Constitution. Now before me are the defendants' Motion to Dismiss Bristol's Amended Complaint, Bristol's response brief, and the defendants' Reply. After review of the record, I conclude that the Motion to Dismiss must be granted in part and denied in part.

I. BACKGROUND.

The claims alleged in this action arose while Bristol was confined at River North Correctional Center (River North), a prison operated by the Virginia

Department of Corrections (VDOC).[1] Bristol sues four mental health (MH) providers: Defendant Olinger, a Nurse Practitioner (NP); Defendant Spangler, "M. ED Resident in Counseling"; Defendant Haynes, "Psych Senior"; and Defendant Abner, a MH staff member, as well as Defendant Bateman, the Assistant Warden of River North. Am. Compl. 1, ECF No. 41. Liberally construed, Bristol's Amended Complaint asserts the following claims:

(1) After a consultation with Bristol on July 21, 2022, and in retaliation for comments Bristol had made, NP Olinger reduced medications Bristol had been taking for five to eight years and did not place him in the Shared Allied Management (SAM) Unit,[2] and the MH defendants were deliberately indifferent to his resulting

---

[1] Bristol is now incarcerated at a different state prison facility.

[2] Bristol does not describe in detail the mental health unit to which he wants to be transferred, which he sometimes refers to as the SAM pod. I take judicial notice of VDOC Operating Procedure (OP) 730.3, vadoc.virginia.gov/files/operating-procedures/700/vadoc-op-730-3.pdf, which outlines various mental health services and units. *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (holding that court may take judicial notice of matters of public record without converting motion to dismiss into motion for summary judgment). SAM is "[a] residential programming unit operated at designated institutions to deliver intensive services in a safe environment to specific inmate populations that typically require a high level of services from security, mental health and wellness services, and/or health services and staff." OP 730.3, at 4. According to OP 830.5 (XIV), before an inmate can be assigned to the SAM unit, he must meet certain eligibility requirements and have designated institutional staff prepare a SAM unit screening profile that is then reviewed and approved by the SAM committee and the chief of housing and programs.

mental and physical distress, all in violation of the First Amendment and the Eighth Amendment;³

(2) Even after Bristol had filed numerous unfilled requests for MH services, he asked to be placed in the SAM pod, where MH staff allegedly visit with inmates on a daily, weekly, and monthly basis. Haynes, Abner, and Spangler denied Bristol access to these services and thus did not treat him comparable to other MH inmates, in violation of the Eighth and Fourteenth Amendments; and

(3) In August and September of 2022, Bristol informed Assistant Warden Bateman through request forms and in person that the other defendants had not been providing him with appropriate MH services. Bateman failed to investigate these complaints in order to ensure that Bristol received appropriate MH services, in violation of the First, Eighth, and Fourteenth Amendments.

Summarizing the facts that Bristol offers to support these claims in the Amended Complaint has proved challenging. He does not provide a complete, consistently dated account of the relevant events in the order in which they occurred, and he apparently relies heavily on exhibits submitted in support of earlier

---

³ Claim (1) and Claim (3) in Bristol's Amended Complaint appear to raise the same retaliation and deliberate indifference claims against the mental health defendants. Therefore, I have considered these allegations as one set of claims for purposes of this Opinion.

documents he filed, without any statement in the Amended Complaint of the facts contained in those exhibits.[4]

Bristol alleges that on February 14, 2022, he filed a written complaint that he "would run out of mental health meds. and would be out of cert[ai]n pills for about two weeks to an [sic] month." Am. Compl. Facts 1, ECF No. 41-2. A response advised that his "meds had to be borrowed from another inmate." *Id.*

On April 14, 2022, Bristol alleges that he wrote a complaint that several requests he had written, asking to "be seen by someone" in mental health, had been ignored.[5] *Id.* Bristol states that Haynes responded, telling him that if he needed to speak with someone, he should file a request, which Bristol claims he had been doing for three to four months. Indeed, Bristol asserts that from February to October 2022,

---

[4] Bristol's Amended Complaint is considered to replace his original Complaint, as the court previously advised him. Order, ECF 50 (May 25, 2023). However, because exhibits attached to the original Complaint provide details not included in the Amended Complaint, I have considered both in compiling this summary of facts related to Bristol's § 1983 claims. I have also considered exhibits attached to Bristol's response to the defendants' prior Motion to Dismiss. Liberally construing his Amended Complaint and most current response in opposition, I conclude that he intended to incorporate his previously submitted exhibits as part of the Amended Complaint.

[5] Bristol submits a copy of a Facility Request dated April 18, 2022, asking for an appointment with the doctor, whom he had not seen in over 90 days. Spangler responded, "No one has seen the psychiatrist for a few months now, due to COVID-19. The clinic has recently opened back up and you [are] scheduled to be seen around 06/01/2022." Compl. Attach. 22, ECF No. 1-1. In another April 2022 Written Complaint Form, Bristol asked for a face-to-face appointment with his psychiatric provider. Haynes responded that a psychiatric appointment was scheduled, and that if Bristol wanted "to talk to the mental health department face-to-face," he should file a request form stating this request. *Id.* at 5.

he asked repeatedly for mental health services, but the defendants "denied [him] the services [he] needed which led [him] to start to have homicidal and suicidal thoughts." *Id.*[6]

On July 21, 2022, NP Olinger met with Bristol via telemedicine to evaluate his psychiatric needs. Bristol

> tried to explain to her that [his] meds w[ere not] working as they should and that [he] needed to be considered for the S.A.M. pod at River North so [he] could have easier access to Mental Health because in regular population Mental Health staff do not make any monthly rounds or monthly reviews which Olinger, Abner, and Spangler said that they don't do or have to do.

*Id.* Bristol alleges that NP Olinger "got mad and as a result of the argument . . . she threatened to take [Bristol] off [his] meds. [Bristol] told her she couldn't, she then stated 'that [he] need[ed] to be careful what [he] ask[ed] for.'" *Id.*

Bristol wrote to Spangler on August 7, 2022, asking why NP Olinger had taken Bristol off his mental health medications. Spangler responded that Bristol had

---

[6] In late June 2022, Bristol wrote requests stating that he had not seen a doctor about his mental health for over five months and wanted reassignment to a mental health pod where he would regularly see mental health staff. He said that he had asked to see someone and that his medication was not working. Compl. Attach 25, ECF 1-1. Responses to the complaint forms indicate that mental health staff met with Bristol on June 29, 2022, and that staff had provided appropriate responses to his past complaints. Bristol also submits a copy of a letter dated July 13, 2022, from the VDOC Health Services Quality Improvement Center, advising him that a family member had called the prison about his MH care on June 28, 2022. The letter advised that by law, staff could only discuss Bristol's medical care directly with him. The letter indicated MH staff's report that Bristol had been seen on June 29, 2022, and that he was receiving and taking his MH medication as prescribed.

refused to sign a consent form. Bristol claims he would have signed the form if not for the argument he had had with NP Olinger on July 21, 2022.[7] He states that he did not give NP Olinger permission to discontinue any medications. He also asserts that she did not "attemp[t] to step [him] down. She just discontinued them." *Id.* at 2. Spangler also told Bristol that NP Olinger discontinued his medications (Atarax, Paxil, and Remeron) because Bristol had showed only symptoms of Antisocial Personality Disorder.[8] Another medication, Buspar, was not discontinued.

Bristol wrote a complaint about MH staff, complaining that when Abner and Spangler came to see him, they allowed an officer to stay in the room without Bristol's consent, so that he did not talk about his MH issues. On August 14, 2022, Bristol wrote a complaint to MH staff, informing them of the bad results he was experiencing, allegedly because NP Olinger had discontinued his medications: loss of sleep and appetite, depression, headaches, and chest pains for which he was seeking medical attention. Abner responded, stating that MH staff had met with Bristol on August 17, 2022, about these concerns. On August 24, 2022, Bristol wrote

---

[7] Bristol asserted that during the 19 months he had been at River North, he had only signed one consent form, dated June 1, 2021, consenting to treatment by Dr. Goodwin, who prescribed four mental health medications: Buspar, Atarax, Remeron, and Paxil. Answer to Mot. Dismiss Ex. 77, ECF No. 39-1.

[8] Bristol submits documentation indicating that he was diagnosed with depression and anxiety disorders in 2020 and 2021 and had been treated with mental health medications from 2019 to 2022.

a complaint about being terminated from his prison job as a barber after five years of service in that position.  He blames his termination on the discontinuation of his MH medications.  Bristol also blames the defendants' actions as the cause of other alleged MH and medical issues:  inability to "focus, function, think right, forget things, or remember alot [sic] things because of depression."  *Id.* at 3.  After being off his mental health medications, starting at the end of August 2022, Bristol claims that he has lost twenty pounds.  He also indicates that the medical staff retained him in the medical unit for a time because of his complaints of chest pain and headaches.  He asserts that the medical doctor asked MH staff to schedule Bristol for MH services.[9]

## II.  DISCUSSION.

### A. The Motion to Dismiss Standard.

"A Rule 12(b)(6) motion to dismiss tests only the sufficiency of a complaint." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).[10]  In considering a Rule 12(b)(6) motion, "[t]he district court must accept all well-pleaded allegations in the complaint

---

[9] It appears from an exhibit submitted by Bristol that in October 2022, Bristol agreed to be housed in the medical unit for monitoring related to his complaints of chest pain, anxiety, and other physical symptoms that he believed were related to discontinuation of his mental health medications.  A medical note from November 2022 indicates that Bristol continued to complain of chest pain and headaches, and the medical department referred him to see mental health staff.

[10] I have omitted internal quotation marks, alterations, and/or citations here and throughout this Opinion, unless otherwise noted.

as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). A complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim includes factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* "[T]he court need not accept legal conclusions, threadbare recitals of the elements of a cause of action, or conclusory statements." *Langford*, 62 F.4th Cir. at 124.

"[C]ourts are obligated to liberally construe pro se complaints, however inartfully pleaded." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017). Liberal construction, however, does not allow me to construct constitutional claims for Bristol based on conclusory statements alone. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Principles requiring generous construction of pro se complaints are not . . . without limits," and a reviewing court "cannot be expected to construct full blown claims from sentence fragments"); *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) ("A pro se plaintiff still must allege facts that state a cause of action.").

B. Supervisory Liability.

Under § 1983, state officials cannot be held liable vicariously for the unconstitutional acts of their subordinates. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017).

In this case, Bristol cannot prevail in a claim that Bateman as a supervisor should be automatically liable under § 1983 because the River North mental health providers allegedly violated Bristol's constitutional rights. To the extent that Bristol brings this action seeking monetary damages against Bateman in his official capacity, such relief is also not available. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).

Against a supervisory defendant such as Bateman, "liability will only lie where it is affirmatively shown that the official charged acted personally" to deprive the plaintiff of constitutional rights. *Alston v. Robinson*, No. 7:22CV00234, 2022 WL 4237495, at *1 (W.D. Va. Sept. 14, 2022). To hold a supervisory official liable for misconduct by a subordinate employee, the plaintiff must state facts showing that: (1) the defendant had actual or constructive knowledge that a subordinate's misconduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the defendant's "response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices" and (3) "an affirmative causal link" existed between the

defendant's inaction and the plaintiff's constitutional injury. *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014).

Moreover, when a subordinate's alleged wrongdoing relates to medical or mental health care, a supervisor with no personal expertise in the medical arena is entitled to rely on the medical judgments of the medical and mental health providers overseeing the plaintiff's course of treatment. *Miltier ex rel. Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding that non-medical supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel). Such mere supervisory officials "cannot be liable for the medical staff's diagnostic decisions." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). It is not the function of the court or prison administrators to second guess the good faith treatment decisions of licensed physicians. *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995).

To summarize the allegations, Bristol asserts that Bateman knew, from face-to-face meetings and from grievances, that Bristol believed he was not receiving adequate mental health treatment, in part, based on other defendants' retaliatory actions. From that lack of appropriate care, Bristol claims he suffered "bodily harm" and had to be housed in the medical unit for three days. Resp. Opp'n 11, ECF No. 53. Bristol contends that from this information, Bateman knew that his mental health

staff was "not following VADOC customs, policies, and state and federal law," such that Bateman should be "held accountable for supervisor liability" because he failed "to act in a way that led to violation of [Bristol's] rights which is called causation for pain and suffering." *Id.*

I cannot find that Bateman knew from Bristol's complaints and documentation that any of the mental health staff were providing unlawfully inadequate or inappropriate mental health care. The documentation Bristol submits to show his communication to the mental health staff indicates that they responded in some fashion and worked to get him a psychiatric appointment if he complained about his medication. They also advised him of the proper method to request a mental health counseling session — a request form for that service, without other extraneous requests stated on the form. None of the defendants, including Bateman, had singular authority to place Bristol in the SAM pod or ensure that he received the type of MH counseling provided to inmates in that unit. Most importantly, Bristol provides no evidence that Bateman has any professional expertise in medical or mental health matters. He was, therefore, entitled to rely on the professionals on his staff to determine appropriate timing and type of counseling and psychiatric care for Bristol's mental health needs. *Shakka*, 71 F.3d at 167. For the reasons stated, I will grant the Motion to Dismiss as to Bristol's claims against Bateman.

C. Eighth Amendment Claims.

A prison official's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A deliberate indifference claim consists of two components, objective and subjective." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Similarly, inmates have a clearly established right to necessary mental health treatment. *DePaola v. Clarke*, 394 F. Supp. 3d 573, 591–94 (W.D. Va. 2019).

First, the plaintiff must prove that, objectively, his medical condition was sufficiently "serious." *Id.* For purposes of a constitutional claim, a condition that qualifies as objectively serious is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko ex rel. Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). I will assume that Bristol has met this factor of his claim. It is undisputed that medical providers had prescribed medications for his mental health needs for some years before he encountered the defendants.

Second, the plaintiff must prove that, subjectively, each defendant was deliberately indifferent to the plaintiff's serious medical need. An official is deliberately indifferent only when he or she "knows of and disregards an excessive risk to inmate health or safety. That is a higher standard for culpability than mere

negligence," such that "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* Put another way, the defendant must have known the plaintiff was suffering from a condition which pose[d] a risk to the prisoner such that it "would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (unpublished). Furthermore, to be unconstitutional, a defendant's conduct must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851.

Taking Bristol's factual allegations in the light most favorable to him, I conclude that the Motion to Dismiss must be denied as to NP Olinger. It is conceivable from the information now before the court that Bristol could persuade a fact finder that NP Olinger, for nonmedical reasons related to an argument between her and Bristol during the July 21, 2022, appointment, abruptly discontinued all but one of his mental health medications. In the alternative, Bristol's allegations could support a finding that NP Olinger diagnosed Bristol with Anti-social Personality Disorder but did not prescribe any treatment or medication to treat that disorder or

his other complaints. At this stage of the litigation, I do not find that Bristol has failed to state any plausible claim of deliberate indifference against NP Olinger.

The equation is different when assessing Bristol's allegations against the other mental health defendants. Bristol does not allege that any of these defendants (Abner, Spangler, and Haynes) have authority to assess or prescribe appropriate mental health medications for any patient. In response to Bristol's complaint forms mentioning his medication, these defendants advised him that he would be scheduled to see the psychiatric provider and that to receive MH counseling, he could simply file a request for that service. Therefore, I will grant the Motion to Dismiss as to these three defendants for the discontinuation of Bristol's mental health medications.

Bristol complains broadly that these defendants did not arrange for him to receive counseling when he asked for it. In support of this allegation, Bristol points to his exhibits. Neither his allegations nor his exhibits provide specific dates when he clearly asked for MH counseling services without also asking for other services for which a psychiatric provider would be responsible. Moreover, on one occasion when two of the MH staff defendants met with Bristol, he complained about privacy concerns rather than accepting the benefit of the services offered. I cannot find that Bristol's allegations state plausible claims that these defendants knew of Bristol's serious need for MH counseling services. Bristol may have desired such services, but he has not stated facts showing that he made clear requests or that the defendants

knew from his communications that he had a serious medical need for more counseling than he received. Therefore, I conclude that at the most, Bristol has stated a disagreement over the course of counseling treatment between these defendants and himself. Such disagreements do not support Eighth Amendment claims regarding mental health treatment. Therefore, I will dismiss Bristol's claims against Abner, Spangler, and Haynes for denial of mental health counseling.

Bristol also appears to complain that the mental health defendants failed to place him in the SAM pod. He apparently discussed this potential housing assignment with NP Olinger and mentioned it in request forms and grievances. As discussed, however, this housing assignment requires an assessment process that involves more than an order from a single mental health provider. Moreover, Bristol's mere desire for such a housing assignment is not the measurement of a constitutional violation. He simply has not shown that he met the requirements for that assignment, and his desire for that placement represents only a disagreement with his MH provider's assessment of his needs. Therefore, I will grant the Motion to Dismiss as to any claim that the defendants denied him placement in the SAM pod.

### D. Retaliation.

Prison officials also may not retaliate against an inmate for exercising his constitutional right to access the court. *Hudspeth v. Figgins*, 584 F.2d 1345, 1347

(4th Cir. 1978). Inmates have a "First Amendment right to be free from retaliation for filing a grievance." *Booker*, 855 F.3d at 546. On the other hand, claims of retaliation against prison inmates must be examined with care because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct" or other concerning behaviors. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

To prevail on a retaliation claim under § 1983, a plaintiff must demonstrate three elements: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017). It is well-established that the filing of a grievance or a lawsuit is protected conduct that satisfies the first element. *Booker*, 855 F.3d at 541.

Bristol argues that all of the mental health defendants acted as they did to retaliate against him for grievances, or in the case of NP Olinger, for his statement that she could not take him off of his MH medications. I will agree that Bristol's grievances and his oral statement to NP Olinger may satisfy the first element of the retaliation legal standard.

The second element, the defendant's adverse action, may be satisfied if the plaintiff alleges that the defendant's action adversely affected his future exercise of his constitutional rights. *Martin*, 858 F.3d a6 249. To do so, the plaintiff must prove that the defendant's alleged retaliatory conduct caused more than de minimis inconvenience to litigation efforts or "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).

As to the adverse action facet of the legal standard, Bristol is essentially rearguing his claims of inappropriate MH care. He complains that discontinuing his MH medications had an adverse effect on his mental health and resulted in physical maladies as well. Bristol does not suggest that his medication change adversely affected his ability to litigate any particular, viable legal claims or show how it would likely do so to any person of ordinary fortitude.

As the third retaliation factor, the plaintiff must state facts showing a causal relationship between his protected activity and the defendant's conduct. *Martin*, 858 F.3d at 249. Bristol utterly fails to state facts showing that any action by Bateman, Abner, Spangler, or Haynes was motivated by Bristol's verbal statements or written complaint forms. His allegations of retaliation against these defendants are merely conclusory and do not warrant further development. Accordingly, I will grant the Motion to Dismiss as to his retaliation claims against these defendants.

Liberally construed, Bristol's allegations against NP Olinger might support a retaliation claim. It is conceivable that he could persuade a fact finder that his statement to her that she could not discontinue his MH medications somehow motivated her to retaliate against him by taking the very action that he claimed she could not take — discontinuing his MH medications. Her alleged statement that Bristol should be careful about what he asked for could conceivably support a retaliatory motivation on NP Olinger's part. Moreover, the alleged physical and mental health symptoms Bristol allegedly suffered from the discontinuation of his medications arguably would chill a person of ordinary firmness from pursuing litigation to avoid such symptoms. Of course, NP Olinger may be able to show that she discontinued Bristol's medications over time[11] because he would not sign a consent form or because of her medical opinion that the prescribed medications did not address the symptoms she observed. It is not my function to decide which option might be believed. Therefore, I will deny the Motion to Dismiss as to Bristol's retaliation claim against NP Olinger.

### E. Equal Protection.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

---

[11] The current record is unclear as to whether some or all medications (except Buspar) were stopped immediately or over time.

XIV, § 1. It does not take from the States all power of classification, but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "[T]o state a claim for violation of the Clause, a plaintiff must plausibly allege first that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020).

First, Bristol fails to state facts supporting any equal protection claim against anyone. As a mental health inmate assigned to the general population, he was not similarly situated in all relevant respects to inmates (even those with the same mental health status indicator) who had completed the assessment process for assignment to the SAM pod. None of the defendants can be held liable under § 1983 for failing to provide services indicated for SAM pod inmates to Bristol while he was assigned to the general population. I will grant the Motion to Dismiss as to such claims.

Second, Bristol asserts that VDOC policies and various laws require mental health staff to make regular rounds to check on the status of mental health patients who are assigned to general population units. At the most, I construe this assertion as a claim that the defendants violated Bristol's constitutional rights because they did not comply with state or VDOC regulations regarding appropriate oversight of mental health patients in prison. It is well established that defendants' alleged

violations of state regulations do not rise to the level of a deprivation of constitutionally protected rights to be actionable under § 1983. *Middleton v. Zych*, No. 7:12-cv-00266, 2012 WL 4742777, at * 2 n.7 (W.D. Va. Oct. 4, 2012) ("[A] claim that prison officials have not followed their own policies or procedures does not amount to a constitutional violation."), *aff'd*, 514 F. App'x 401 (4th Cir. 2013) (unpublished). I will grant the defendants' Motion to Dismiss as to all claims that they failed to follow state procedures or regulations, because such alleged actions do not present constitutional issues addressable under § 1983.

### III. CONCLUSION.

For the reasons stated, it is hereby **ORDERED** as follows:

1. The defendants' Motion to Dismiss, ECF No. 46, is GRANTED IN PART AND DENIED IN PART. The motion is DENIED as to the retaliation and deliberate indifference claims against defendant Olinger, but the motion is GRANTED as to all other claims against her and against all other defendants;

2. The Clerk is DIRECTED to terminate defendants Bateman, Abner, Spangler, and Haynes as parties to this action; and

3. Defendant Olinger is DIRECTED to file an answer and any summary judgment motion within 28 days from the entry of this Order, or the case will be set for a jury trial.

ENTER: March 8, 2024

/s/ JAMES P. JONES
Senior United States District Judge